## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WEST COAST PRODUCTIONS, INC.,

     **Plaintiff,**

          **v.**                      **Civil Action No. 11-55 (JEB/JMF)**

DOES 1-1,434,

     **Defendants.**

## MEMORANDUM OPINION

This case was referred to me for full case management.  Currently pending and ready for resolution are 1) Plaintiff's Motion for Extension of Time to Name and Serve Defendants [Fed. R. Civ. P. 4(m)] [#16] and 2) plaintiff's Renewed Motion for Leave to Take *Additional Discovery Prior to Rule 26(f) Conference; Memorandum of Points and Authorities in Support Thereof* [#17].  For the reasons stated below, both motions will be granted.

## BACKGROUND

Plaintiff, West Coast Productions, is the owner of the copyright for the motion picture "Juicy White Anal Booty 4." Complaint for Copyright Infringement [#1] ¶5.  According to plaintiff, numerous individuals illegally downloaded and distributed its film over the Internet, in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*[1] Id. ¶¶1, 3.  At the time the law suit was filed, plaintiff did not know the identities of these individuals. Id. ¶17.  Plaintiff did, however, know the Internet Protocol ("IP") addresses of the computers associated with the alleged infringers. Id.  Plaintiff therefore filed suit against all the individuals whose IP addresses

---

[1] All references to the United States Code, the D.C. Code, or the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

it had, denominating them as "John Doe." Id.  Once the complaint was filed, plaintiff then

moved, pursuant to Rule 26(f) of the Federal Rules of Civil Procedure,[2] to conduct discovery

prior to the conference required by that rule.[3]  At that time, plaintiff was unable to serve a

summons or complaint on any of the Doe defendants, as it did not know who they were or where

they were located.  Plaintiff's motion for discovery was granted on June 28, 2011.[4]

On August 8, 2011, plaintiff moved for leave to take additional discovery.[5]  Thereafter,

the Court denied plaintiff's motion without prejudice and ordered plaintiff to show cause "why

this Court can assert jurisdiction over any defendant (a) who is not domiciled in the District of

Columbia, or (b) as to whom plaintiff lacks a good faith basis to assert that he or she committed

the act that is the premise of the plaintiff's claim for relief in the District of Columbia, and why

venue is proper unless the defendant resides in the District of Columbia." Order [#20] at 1.

These issues will now be resolved.

## DISCUSSION

### I.   Introduction

This case and the numerous other cases just like it are extraordinary in that they involve

an effort on the part of movie copyright holders to secure the identities of what may be hundreds

of individuals so that they can be sued in this Court for illegally downloading a movie onto their

---

[2] See Fed. R. Civ. P. 26(d)(1) (party may not seek discovery from any party before Rule 26(f)
conference).

[3] See Motion for Leave to Take Discovery Prior to Rule 26(f) Conference [#3].

[4] See Memorandum Order [#11].

[5] See Motion for Leave to Take Additional Discovery Prior to Rule 26(f) Conference;
Memorandum of Points and Authorities in Support Thereof [#14].

personal computers.  As I will explain in more detail below, these cases have imposed and will

continue to impose extraordinary burdens on the courts and the Internet Service Providers

("ISPs") that must comply with the subpoenas.  Moreover, it confronts the Doe defendants, the

alleged infringers, with the necessity of answering a complaint that demands substantial

damages, often in courts far from their homes.  These burdens convince me that the discovery

sought must be conditioned upon certain requirements that I hope will establish a middle ground

between the plaintiffs' need for information and the unique burdens being cast upon the courts,

the subpoenaed parties, and the Doe defendants.

Additionally, I am concerned that there are significant issues that would preclude this

Court from ever asserting personal jurisdiction over individuals who do not reside in the District

of Columbia.  It may also be true that venue can never be proper in this Court unless the

defendant resides here.  I do not intend to prejudge those issues before they are legitimately

raised by persons who are in fact made parties to this lawsuit.  I address them herein solely to

alert plaintiff to the principles that will guide my future analysis of whether, as I am requiring

plaintiff to do, it can in good faith name as defendants individuals who do not reside in the

District of Columbia.

Finally, I will explain why the unique burdens imposed by this lawsuit on the Court, the

subpoenaed parties, and the Doe defendants justify the other conditions I am imposing.

II.     Standard of Review

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, although "[a] party may not

seek discovery from any source before the parties have conferred as required by Rule 26(f),"

they may do so "when authorized . . . by court order." Fed. R. Civ. P. 26(f).  Such authorization,

however, must be based on a showing of "good cause." Fed. R. Civ. P. 26(d)(1).  "[I]n order to

get jurisdictional discovery[,] a plaintiff must have at least a good faith belief that such discovery

will enable it to show that the court has personal jurisdiction over the defendant." <u>Caribbean

Broad. Sys. Ltd. v. Cable & Wireless PLC</u>, 148 F.3d 1080, 1090 (D.C. Cir. 1998).  Furthermore,

all discovery, whether before or after the Rule 26(f) conference, should be precluded when "the

burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P.

26(b)(2)(c).[6]

Ultimately, Rule 26 "vests the trial judge with broad discretion to tailor discovery

narrowly and to dictate the sequence of discovery." Fed. R. Civ. P. 26; <u>Watts v. Sec. & Exch.

Comm'n.</u>, 482 F.3d 501, 507 (D.C. Cir. 2007) (internal citation omitted).  Generally, this Circuit

takes a liberal approach to jurisdictional discovery. <u>Caribbean Broad. Sys., Ltd.</u>, 148 F.3d at

1090.  Plaintiffs are, of course, still subject to Rule 11's good faith requirements.  <u>See</u> Fed. R.

Civ. P. 11.

III.     <u>Applicable Law</u>

A.     <u>Law Governing Personal Jurisdiction</u>

Plaintiff's cause of action, tortious copyright infringement,[7] is brought under a federal

---

[6] <u>See also</u> <u>Linder v. Dep't of Def.</u>, 133 F.3d 17, 24 (D.C. Cir. 1998) ("Whether a burdensome
subpoena is reasonable 'must be determined according to the facts of the case,' such as the
party's need for the documents and the nature and importance of the litigation.") (internal
citation omitted); <u>In re Micron Tech., Inc. Sec. Litig.</u>, 264 F.R.D. 7, 9 (D.D.C. 2010) ("The
'undue burden' test requires district courts to be 'generally sensitive' to the costs imposed on
third parties . . ..") (internal citations omitted); <u>N.C. Right to Life, Inc. v. Leake</u>, 231 F.R.D. 49,
51 (D.D.C. 2005) ("While quashing a subpoena goes against courts' general preference for a
broad scope of discovery . . . limiting discovery is appropriate when the burden of providing the
documents outweighs the need for it.").

[7] "It is well settled in this jurisdiction [the District of Columbia Circuit] that a claim for
copyright infringement sounds in tort." <u>Nu Image, Inc. v. Does 1-23,322</u>, 799 F. Supp. 2d 34, 43,
n.3 (D.D.C. 2011) (citing <u>Stabilisierungsfonds Fur Wein v. Kaiser</u>, 647 F.2d 200, 207 (D.C. Cir.
1981)).

statute, the Copyright Act. [#1] ¶ 1 (citing 17 U.S.C. § 101).  The statute cited does not provide

for the exercise of personal jurisdiction over alleged infringers on a nationwide or other basis.

Plaintiff must therefore predicate the court's jurisdiction over the infringers on the reach of

District of Columbia law. Fed. R. Civ. P. 4(e)(1).

With respect to an individual domiciled in the District of Columbia, District of Columbia

law provides for the exercise of personal jurisdiction as to "any claim for relief." D.C. Code §

13-422 (2001).  But, with respect to an individual who is not domiciled in the District of

Columbia, the so-called "long arm" provision of the personal jurisdiction statute imposes a

significant requirement. The statute provides the following:

> (a)    A District of Columbia court may exercise personal jurisdiction over a
> person, who acts directly or by an agent, as to a claim for relief arising
> from the person's - -
>
> * * *
>
> (3)    causing tortious injury in the District of Columbia
> by an act or omission in the District of Columbia;

D.C. Code § 13-423 (2001).  Thus, to meet the statutory test for imposing jurisdiction over the

person of a putative infringer, it would appear that the plaintiff must show that the infringer

caused the tort of infringing by an act done in the District of Columbia.

In this context, and in cases similar to this one, it is worth noting that plaintiffs have

argued that the way in which these movies are downloaded, via the BitTorrent protocol, permits

the assertion of jurisdiction by this Court over persons who do not reside in the District of

Columbia.  To better understand the argument, one must first understand the BitTorrent

technology.  The following excerpt is taken from <u>Diabolic Video Productions, Inc. v. Does 1-

2,099</u>, No. 10-CIV-5865, 2011 WL 3100404 (N.D. Cal. May 31, 2011):

5

Instead of relying on a central server to distribute data directly to individual users, the BitTorrent protocol allows individual users to distribute data among themselves by exchanging pieces of the file with each other to eventually obtain a whole copy of the file. When using the BitTorrent protocol, every user simultaneously receives information from and transfers information to one another.

In the BitTorrent vernacular, individual downloaders/distributors of a particular file are called "peers." The group of peers involved in downloading/distributing a particular file is called a "swarm." A server which stores a list of peers in a swarm is called a "tracker." A computer program that implements the BitTorrent protocol is called a BitTorrent "client."

The BitTorrent protocol operates as follows. First, a user locates a small "torrent" file. This file contains information about the files to be shared and about the tracker, the computer that coordinates the file distribution. Second, the user loads the torrent file into a BitTorrent client, which automatically attempts to connect to the tracker listed in the torrent file. Third, the tracker responds with a list of peers and the BitTorrent client connects to those peers to begin downloading data from and distributing data to the other peers in the swarm. When the download is complete, the BitTorrent client continues distributing data to the peers in the swarm until the user manually disconnects from the swarm or the BitTorrent client otherwise does the same.

Id. at *1-2.

While certain plaintiffs have asserted that the technology associated with this "swarm of peers" permits any court to assert jurisdiction over all of them, that argument has been rejected by some of the courts to whom it has been addressed.  See, e.g., 808 Holdings, LLC v. Collective Sharing Hash E37 . . ., No. 12-CIV-191, 2012 WL 1581987, at *6 (S.D. Cal. May 4, 2012) ("It is unlikely that an individual in a distant jurisdiction would envision that the acts alleged would subject him to the jurisdiction of this Court.  Similarly, any allegation that personal jurisdiction exists because of the swarming activity is inadequate."); Liberty Media Holding, LLC v. Tabora, No. 11-CIV-651, 2012 WL 28788 (S.D. Cal. Jan. 4, 2012) (rejecting swarm technology as basis

for establishing personal jurisdiction); <u>Berlin Media Art e.k. v. Does 1–654</u>, No. 11-CIV-3770,

2011 U.S. Dist. LEXIS 120257, *4 (N.D. Cal. Oct. 18, 2011) (rejecting argument that everybody

who used . . . BitTorrent would subject themselves to jurisdiction in every state) (internal

quotation marks and citation omitted); <u>Millennium TGA v. Doe</u>, 2011 U.S. Dist. LEXIS 110135,

at *2–8 (N.D. Ill. Sept. 26, 2011) (same); <u>On the Cheap, LLC v. Does 1-5,011</u>, 280 F.R.D. 500,

505 (N.D. Cal. 2011) (same).

 In the current case, if plaintiff claims that this Court may exercise personal jurisdiction

over individuals who do not reside in the District of Columbia, I expect it, at the appropriate

time,[8] to meet its good faith obligation to explain to me why such jurisdiction is appropriate.

Should that response be based on a "swarm of peers" theory, plaintiff will have the burden of

proving how that theory permits the exercise of jurisdiction over persons who do not reside in

the District of Columbia.

 B. <u>Law Governing Venue</u>

 Venue in copyright cases is governed exclusively by 28 U.S.C. § 1400, which states the

following: "Civil actions, suits, or proceedings arising under any Act of Congress relating to

copyrights or exclusive rights in mask works or designs may be instituted in the district in which

the defendant or his agent resides or may be found."[9] 28 U.S.C. § 1400(a).  Thus, at this point, it

---

[8] <u>See</u> <u>Call of the Wild Movie, LLC v. Does 1-1062</u>, 770 F. Supp. 2d 332, 347 (D.D.C. 2011)
(rejecting as premature challenge by ISP to subpoena on grounds that there would be no personal
jurisdiction over non-residents because subscribers had not yet been named as defendants);
<u>MGCIP v. Does 1-316</u>, No. 10-CIV-6677, 2011 WL 2292958, at *2 (N.D. Ill. June 9, 2011)
(same).

[9] For the purposes of this statute, a defendant "may be found" to be in the judicial district where
his contacts with that district would support jurisdiction over his person. <u>Milwaukee Concrete
Studios, Ltd. v. Fjeld Mfg. Co.</u>, 8 F.3d 441, 446 (7th Cir. 1993).

would seem that an individual who does not reside in  the District of Columbia can avail himself

of the defense of improper venue.

IV.    <u>Discovery Must Be Conditioned</u>

   Several judicial approaches have emerged with regard to the allowance of jurisdictional

discovery in these BitTorrent cases.  Viewed on a continuum, these approaches range from

permitting the discovery unconditionally, permitting it upon certain conditions, or allowing the

case to proceed without jurisdictional discovery against only those Doe defendants who reside in

the forum where they have been sued.  The latter approach necessitates plaintiffs' utilization of a

certain type of software that purportedly allows them to ascertain where the individual associated

with a specific IP address is located.

   Each approach has practical advantages and disadvantages.

   The two approaches that permit discovery, whether or not conditioned upon certain

terms, are, in my view, most consistent with plaintiffs' unquestionable right, in this Circuit, to

conduct jurisdictional discovery.  If the exercise of that "right" was conditioned upon plaintiffs'

first establishing the likelihood that the court has jurisdiction over a particular individual, that

right would be eviscerated.  The simple reality of this technology, however, is that it is

impossible for plaintiffs to know the identity of a Doe defendant merely by knowing that a

particular IP address is associated with a particular street address.  Only the ISP can tie a

particular IP address with an individual subscriber and therefore a specific address.[10]  In this area

---

[10] This Court has received several letters and other communications from the Doe defendants
insisting that they do not even know how to download a film and could not possibly have done
what plaintiffs claim they did.  On occasion, they wonder out loud whether someone else in their
homes could have downloaded the film or whether someone outside their homes accessed their
network connection without permission.  As these communications suggest, linking an IP
address with a subscriber's name is therefore only the first step in identifying a potential

of human creativity, there is the greatest likelihood of massive infringement given the ever increasing use of the Internet to download digital media.  Paradoxically, the protections provided to these copyright holders by the Copyright Act would evaporate, unless copyright holders are permitted to engage in this discovery.

The approach that requires plaintiffs to use an intermediate technology to first identify those Doe defendants who live within or nearby the forum constitutes an explicit endorsement of the accuracy of this technology, even though its scientific foundation and the certainty of its results have never been tested before this Court by the adversary process.  See Call of the Wild Movie, LLC, 770 F. Supp. 2d at 347 (finding techniques permitting user to relate IP address of computer to particular user are "not completely" accurate and "reveal only where a defendant is likely to be located.").  Surely, in an adjudicatory system that requires expert testimony when the topic at issue is "based on scientific, technical, or other specialized knowledge,"[11] the blind acceptance by a court of the efficacy of a particular piece of software is inconsistent with the traditional manner in which a court resolves factual disputes.  Moreover, this approach implicitly accepts the defenses of lack of jurisdiction over the person or improper venue before an individual is even named as a defendant and, more significantly, before plaintiffs have had an opportunity to make their case.

---

copyright infringer.  See In re BitTorrent Adult Films Copyright Infringement Cases, No. 11-CIV-2995, 2012 WL 1570765, at *3-4 (E.D.N.Y. May 1, 2012) (exploring the reasons why knowing an IP address may not justify conclusion that subscriber is the person who in fact downloaded the film and this inability and other factors justified refusal to grant pre-26(f) discovery).

[11] Fed. R. Evid. 701(c).  Cf. United States v. O'Keefe, 537 F. Supp. 2d 14, 24 (D.D.C. 2008) (assertion of inadequacy of search terms should be premised on expert evidence admissible under Fed. R. Evid. 702 where that topic, the adequacy of search terms used to search a computer, was beyond the ken of laymen).

However, the unconditioned discovery plaintiffs seek presents other dangers and problems.  First, it is a rare non-class action in the federal courts that involves five or more defendants; this one involves hundreds of putative defendants.  Second, parties traditionally communicate with the Court electronically through the Court's Electronic Court Filing system.  In these cases, until these individuals are named as actual, and not Doe defendants, they must resort to communicating with the Court either in writing or by phone.  Their doing so in such large numbers has placed a significant new and unique burden on the Clerk's Office.  As a result, a member of the Clerk's Office has had to be specifically assigned to handle all these communications.

While the Clerk's Office must meet the public's needs, the cost of these cases in terms of resources, time, and money is significant and not alleviated by the filing fees plaintiffs have paid.  By combining all of the Doe defendants in one case, plaintiffs avoid having to pay multiple filing fees, even though their cases impose significant clerical costs upon the Court.[12]  Conditions that would alleviate this burden but still permit plaintiffs to get the information they need are certainly advisable.

Furthermore, unconditioned discovery also creates a distinct burden on the ISPs, who are obliged by plaintiffs' subpoenas to match IP addresses with subscribers.  The ISPs are, of course, large corporations with sufficient funds to hire expert counsel to protect their interests by, for

---

[12] Notably, some courts have held that joining all the Doe defendants in one case violates Rule 20 of the Federal Rules of Civil Procedure.  E.g. Third Degree Films, Inc. v. Does 1-108, No. 11-CIV-3007, 2012 WL 1514807, at *3 (D. Md. Apr. 27, 2012); Media Products v. Does, No. 12-CIV-348, 2012 WL 1150816, at *2 (D. Md. Apr. 4, 2012); Nu Image, Inc. v. Does 1-3,932, No. 11-CIV-545, 2012 WL 646070, at *6 (M.D. Fla. Feb. 28, 2012).  Contra Raw Films, Ltd. v. John Does 1-11, No. 12-CIV-368, 2012 WL 684763, at *3-4 (N.D. Cal. Mar. 2, 2012); Liberty Media Holdings, LLC v. Swarm Sharing Hash File, 821 F. Supp. 2d 444, 451 n.6 (D. Mass 2011).

example, contesting the subpoenas as overly burdensome under Rule 45 of the Federal Rules of Civil Procedure.  See, e.g., Call of the Wild Movie, LLC, 770 F. Supp. at 354-59.  That expense, however, may make it cheaper and more efficient for the ISP to comply rather than resist the subpoenas.  Nevertheless, the Court should not impose any unnecessary burden on the ISPs, lest the cost ultimately be passed on to their consumers, which, these days, means almost everyone in the United States.

Finally, and most importantly, the interests of the Doe defendants must be addressed. The federal courts have always expressed their solicitude for parties who proceed *pro se* by requiring, for example, that they receive notice of the consequences of failing to answer a particular pleading. Angellino v. Royal Family Al-Saud, 681 F.3d 463, 470 (D.C. Cir. 2012); Moore v. Agency for Int'l Dev., 994 F.2d 874, 876 (D.C. Cir. 1993).  Additionally, their filings are to be liberally construed and their pleadings are not held to the stringent standards that apply to pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Kim v. U.S., 840 F. Supp. 2d 180, 185 (D.D.C. 2012).

Similarly, when lawyers speak to unrepresented parties or negotiate with them, they too have specific responsibilities. Stephen Gillers, Roy D. Simon & Andrew M. Perlman, Regulation of Lawyers: Statutes and Standards 921 (2012) (Under Rule 4.3 of the D.C. Rules of Professional Conduct, when dealing with an unrepresented person on behalf of a client, a lawyer 1) may not give advice, other than the advice to get a lawyer; 2) may not state that she is disinterested; and 3) must correct any misunderstanding of her role).

This solicitude and concern for *pro se* parties should also be extended to Doe defendants. This is particularly so when one appreciates how unfamiliar with court proceedings many of these individuals may be.  A layperson who is served with a "summons" and "complaint"

11

demanding that he or she file an "answer" or risk "default" in a court far from home, may not understand the legal terminology and may find the entire matter baffling and distressing, to say the least. Confronted with that reality, the individual will first have to decide whether to hire, at a substantial expense, a lawyer who may not be admitted to the bar of the forum court. If, on the other hand, the individual decides to proceed *pro se*, without a lawyer, then he will have to defend himself as best as he can, either by relying on his own wits or by resorting to "legal" forms available on the Internet.[13] The point is significant. It is hard to believe that on the crucial issue presented–whether this Court may assert jurisdiction over their persons–lay persons would have the knowledge and experience to assert the defense of lack of personal jurisdiction. At least equally uncertain is that they would know that the defense is waived if they answer the complaint without either asserting it or moving to dismiss the complaint, on that basis, prior to answering. See Fed. R. Civ. P. 12; Angellino, 681 F.3d at 463 (dismissal of *pro se* complaint for failure to effect service reversed because district court did not provide minimal notice of consequences of failing to comply with procedural rules); Moore, 994 F.2d at 876 (same).

Finally, there is the problem of the creation of "settlement" websites by the plaintiffs in these BitTorrent copyright cases. Apparently, as soon as the Doe defendants are identified by name and address, plaintiffs send them a notice inviting them to settle the case for a specified sum.[14] These individuals are then directed to websites where they can make payment via credit

---

[13] These documents may or may not have been drafted by a lawyer. Furthermore, the act of downloading forms posted on the Internet is, of course, utterly void of the competent representation that would be provided by a lawyer to his client had that lawyer been retained. See Regulation of Lawyers: Statutes and Standards at 827 (Under D. C. Rule of Professional Conduct 1.1(a), a lawyer shall provide competent representation to a client).

[14] See Mick Haig Prods. E.K. v. Does 1-670, No. 11-CIV-10977, 2012 WL 2849378, at *3 (5th Cir. July 12, 2012) (condemning tactic of "suing anonymous internet users for allegedly

card or Paypal.  To my knowledge, neither I nor any other judge have exerted control over the

contents of these websites, since asserting such control may be inconsistent with traditional

notions of judicial impartiality.  It is equally true, however, that the court processes are being

used to further these efforts.  In other words, settlement offers are being made to individuals who

may not understand that they have defenses to the lawsuit which, if successfully pled, would bar

plaintiffs from any recovery.  Of course,  plaintiffs' counsel will not inform these individuals of

their rights because, as indicated above, they are not permitted by the ethical rules to give legal

advice to unrepresented persons other than the advice to get counsel.

       While I disagree with the judicial approach that favors ruling on the questions of

jurisdiction over the person, venue, and possible misjoinder, before a person is even named as a

defendant, and while I will not insist upon the use of some kind of identification software, I am

firmly convinced that it would be a gross abuse of discretion for me not to impose certain

conditions upon plaintiffs being permitted to take the jurisdictional discovery they seek.  There is

simply nothing ordinary about these cases and they require something more than ordinary

judicial passivity while service is accomplished.

       I will therefore impose the following conditions on the discovery sought, which speak to

each of the concerns I have just addressed.

_____

downloading pornography illegally, using the powers of the court to find their identity, then
shaming or intimidating them into settling for thousands of dollars–a tactic that [the copyright
holder's counsel] has employed all across the state and that has been replicated by others across
the country").  See also In re BitTorrent Adult Films Copyright Infringement Cases, 2012 WL
1570765, at *3-4; Third Degree Films, Inc., 2012 WL 1514807, at *4; First Time Videos, LLC
v. Doe, No. 12-CIV-621, 2012 WL 1355725, at *5 (E.D. Cal. Apr. 18, 2012); Pacific Century
Int'l, Ltd. v. Does 1-37, ___ F.R.D. ___, 2012 WL 1072312, at *3, 5 (N.D. Ill. Mar. 30, 2012);
On the Cheap, LLC, 280 F.R.D. at 505.  In all of these cases the courts expressed their grave
concerns about settlement overtures to the Doe defendants.

A.      First Condition:  To Alleviate the Burden on the Court

Plaintiff shall provide the ISPs with the attached notice.  The ISPs will then forward the

notice to the Doe defendants.  The notice explains the lawsuit and its significance to them.  By

doing this, I hope to alleviate any concerns the Doe defendants might have that would otherwise

cause them to communicate with me, my chambers, or the Clerk's office.  I also hope to avoid

the awkwardness of the Court (myself, my chambers, or the Clerk's office) having to decline

speaking *ex parte* to people who, understandably, have questions and concerns.  With respect to

the Clerk's office, I am afraid that I cannot think of any conditions that would alleviate their

other burdens.

B.      Second Condition: To Alleviate the Burden on the ISPs

Since the ISPs are the only source of the information plaintiff needs to proceed, plaintiff

must be permitted to subpoena the ISPs.  Of course, the ISPs unquestionably have the right to

challenge those subpoenas under Rule 45 if they see fit.  I will not prejudge any such challenge

at this point because I believe that the ISPs can fend for themselves.

C.      Third Condition: To Alleviate the Burden on the Doe Defendants

As I noted above, I am concerned by the prospect of plaintiff's making settlement offers

to the Doe defendants when these individuals may not be aware that they have legitimate

defenses, particularly the defenses of lack of jurisdiction over the person, improper venue, and

improper joinder.  I have no inclination to dictate to plaintiff (or any one else) what they may or

may not say during settlement negotiations.  However, I have decided to preclude plaintiff from

communicating directly with the Doe defendants prior to plaintiff's naming these individuals as

actual defendants in the complaint.  Once they are named, further communications with them

will require my permission.

14

D.     Fourth Condition:  Good Faith Requirement

Finally, I am requiring plaintiff to name as actual defendants only those Doe defendants who it believes, in good faith, to be amendable to the assertion of jurisdiction by this Court over their persons and as to whom venue is proper in this forum.  I am not prejudging any argument as to either of those issues.  While plaintiff will have an opportunity to address them in the ordinary course, if this case survives the naming of the defendants, I remind plaintiff that I purposefully identified the relevant principles pertaining to personal jurisdiction and venue.  I expect that they will be ready to establish why this Court may assert personal jurisdiction over the Doe defendants who do not reside in the District of Columbia and why venue over any non-resident is proper in this judicial district.

In this context, good faith means good faith in fact and law.  If plaintiff cannot factually or legally support naming as a defendant an individual who is not a resident of the District of Columbia, it runs the risk of my finding that their doing so was not in good faith.  Plaintiff would thereby not only violate my Order but would run the risk of violating the requirements of Rule 11 of the Federal Rules of Civil Procedure and the prohibition against such behavior contained in 28 U.S.C. § 1927, which states that any attorney who "so multiplies the proceedings in any case unreasonably and vexatiously" may be required to pay resulting costs.

An order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE